[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision Granting Respondent's Motion to Dismiss and Entering a Judgment of Dismissal
This petition for a Writ of Habeas Corpus (#102) was originally filed on April 9, 1997 and thereafter amended on September 20, 2002 (#113). On October 7, 2002, the Respondent, Warden of the State Prison, filed a Motion to Dismiss (#118) on the grounds that this petition, even as amended, constituted the filing of successive habeas petitions and amounted to an abuse of the Writ. On October 29, 2002, there having been no objection by the petitioner, the Court, Fuger, J, granted the Motion to Dismiss (#118) and entered a Judgment of Dismissal (#120). On November 4, 2002, the petitioner filed a Motion to Reargue (#121). At a hearing held before this Court on November 18, 2002, the Judgment of Dismissal (#120) was set aside and the parties were permitted to argue their respective positions in regard to the respondent's Motion to Dismiss (#118). After a full consideration of the arguments by the parties, both in the written briefs and raised at oral argument, this Court will grant the respondent's Motion to Dismiss as to Counts One and Two of the petitioner's amended complaint and deny the Motion to Dismiss as Count Three. The Court hereby enters a Judgment of Dismissal as to Counts one and Two.
 Factual and Procedural Background
The petitioner was originally committed to the custody of the Commissioner of Corrections on July 24, 1982 as a result of his arrest. Following a trial before a jury, he was convicted of one count of Murder in violation of C.G.S. § 53a-54a, one count of criminal attempt to commit Murder in violation of C.G.S. §§ 53a-49 53a-54a and one count of carrying a weapon in a motor vehicle in violation of C.G.S. § 29-38. On June 14, 1983 he was sentenced by the Court, Lavery, J to a total effective sentence of sixty (60) years of incarceration. The petitioner commenced serving that sentence immediately.
The Connecticut Supreme Court decided the petitioner's direct appeal of CT Page 14746 his conviction on August 19, 1986. His conviction was affirmed. See Statevs. Utz, 201 Conn. 190 (1986). Since that time, the petitioner has filed numerous petitions for a Writ of Habeas Corpus. He filed five of these in the Judicial District of Stamford/Norwalk in 1990. Two of these petitions were withdrawn, Docket Nos. CV90-0107818 and CV90-0107819, while two of the petitions, Docket Nos. CV90-0107817 and CV90-0107821, were consolidated and decided by the Court, Karazin, J on April 9, 1991. These petitions alleged ineffective assistance by the petitioner's trial defense counsel. A third petition under Docket No. CV90-0107820 alleging ineffective assistance of the counsel who represented the petitioner in his motion for a new trial was also decided by the Court, Karazin, J on the same day, April 9, 1991. All of the petitions were denied.
Shortly thereafter, the petitioner filed two additional petitions for a writ of habeas corpus, this time in the Judicial District of Tolland. The petitioner once again alleged that his trial defense counsel was ineffective. In addition, the petitioner asserted that the counsel who had represented him at the habeas proceedings before judge Karazin were also ineffective. These petitions were consolidated for trial under Docket No. CV911128 and decided by the Court, Bishop, J on December 4, 1996. These petitions were likewise denied.
 Discussion of Law
This petitioner has had numerous opportunities to attack the effectiveness of the representation he received by his trial defense counsel. That issue, the subject of numerous habeas petitions, was fully litigated before two Superior Court Judges in two Judicial Districts. He has been denied on all occasions. He has previously filed a petition to challenge the effectiveness of the counsel who represented him at his prior habeas trials and this petition was likewise denied. Now, the petitioner returns to the Court and has filed yet another petition challenging the effectiveness of his habeas counsel and, for the first time, his appellate counsel. While the availability of the petition for a writ of habeas corpus is a particularly important freedom recognized in Anglo-American jurisprudence, it is not an endless well to which one can constantly return time after time. It is clear that, at least, in regard to collateral challenges to his representation at the trial and habeas levels, the petitioner has fully litigated these grounds and the motion to dismiss shall be granted. As regards his newly raised challenge to the effectiveness of his appellate counsel, the petitioner will be allowed the benefit of the doubt and permitted to proceed, although it is close to being an abuse of the writ.
At common law, one could file multiple and repeated petitions for a CT Page 14747 writ of habeas corpus, the doctrine of res judicata being inapplicable. "[A] renewed application could be made to every other judge or court in the realm, and each court or judge was bound to consider the question of the prisoner's right to a discharge independently, and not to be influenced by the previous decisions refusing discharge." W. Church, Writ of Habeas Corpus § 386, p. 570 (2nd edition 1893). This was permissible because, at common law, there was no right to appellate review of a denial of a petition for a writ of habeas corpus; consequently, successive writs served as a substitute for the right of a petitioner to appeal.
The development of appellate review of the decisions on habeas corpus petitions caused some courts during the early part of the 20th century to question the viability of the common law rule. In fact some states, notably Georgia [see Perry vs. McLendon, 62 Ga. 598 (1879)], South Dakota [see McMahon vs. Mead, 30 S.D. 515 (1912)], and Wisconsin [see ex parteHeller, 146 Wis. 517 (1911)], completely rejected the common law rule and applied the doctrine of res judicata to denials of habeas petitions. The federal courts reaffirmed that while the doctrine of res judicata did not apply to habeas petitions, with the advent of the right to appeal adverse decisions on habeas petitions, the common law rule of endless petitions was modified. Salinger vs. Loisel, 265 U.S. 224 (1924). Thus began a long series of cases and legislative changes culminating in the decision of the Supreme Court in McCleskey vs. Zant, 499 U.S. 467 (1991). Now, successive and abusive petitions for writs of habeas corpus may be dismissed.
The determination as to whether the petitioner is abusing the right to file a petition for a writ of habeas corpus lies within the trial court. "[T]he State must plead an abuse of the writ with particularity, and [thereafter] the burden then shifts to petitioner to show that presentation of the new claim does not constitute abuse. [Price vs.Johnston, 334 U.S. 266 at 292 (1948)]." See Mcleskey vs. Zant, infra. at 482. Here in Connecticut "decisions concerning abuse of the writ are addressed to the sound discretion of the trial court." Iasiello vs.Manson, 12 Conn. App. 268 at 271 (1987). Moreover, the "applicant must, in other words, show that his application does, indeed, involve a different legal ground, not merely a verbal reformulation of the same ground." Williams vs. United States, 731 F.2d 138 at 141 (2nd Circ. 1984). Finally, the "petitioner bears a heavy burden on appeal to show that the trial court abused its discretion" in finding an abuse of the writ. State vs. Morra, 195 Conn. 421 at 437 (1985).
In the instant case, the petitioner has not asserted any new legal grounds, except for the alleged ineffectiveness of appellate counsel. CT Page 14748 "Ground must mean `a sufficient legal basis for granting the relief sought.'" Sanders vs. United States, 373 U.S. 1 (1963). Here, the relief sought is a new trial for the petitioner. The petitioner has offered three legal grounds in support of his request: specifically, (1) his habeas counsel were ineffective, (2) there was prosecutorial misconduct, and (3) his appellate counsel was ineffective. Clearly, the first ground has been dealt with repeatedly and the petitioner will not receive yet another opportunity to attempt to litigate the ineffectiveness of his habeas counsel and his trial defense counsel.[1] The second ground raised by the petitioner is one that would be appropriately raised on a direct appeal. Now, since the Court is going to permit the petitioner to attempt to prove that his appellate counsel was ineffective, and since the petitioner has alleged that the issue of prosecutorial misconduct should have been raised on direct appeal, then that ground is properly merged in with the third ground and will therefore be dismissed as a separate ground. The third ground, therefore, namely that the petitioner was denied the effective assistance of appellate counsel, has not been previously raised in any prior habeas petition.
Nevertheless, the fact that the petitioner has never raised the issue of ineffective assistance of appellate counsel in any of his previous seven habeas petitions does not, in and of itself, mandate that he be permitted to now pursue the matter in a new habeas petition. The respondent has quite correctly argued that "a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice." McLeskey vs. Zant, infra. at 489. Clearly, "if a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one, or for some other reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. . . . Nothing in the traditions of habeas corpus required the federal courts to tolerate needless, piecemeal litigation or to entertain collateral proceedings whose only purpose is to vex, harass, or delay."Sanders vs. United States, at 18. Indeed, even something less than a "deliberate choice" not to raise an issue in the first petition could constitute an abuse of the writ. See, for example, Woodard vs. Hutchins,464 U.S. 377 (1984) (no explanation as to why an issue was not raised in the first petition constituted an abuse of the writ), Antone vs. Dagger,465 U.S. 200 (1984) (hasty preparation of the initial petition that overlooked a ground did not warrant raising that ground in a subsequent petition), and Kuhlmann vs. Wilson, 477 U.S. 436 (1986) (raising grounds in a subsequent petition that were available at the first filing is an CT Page 14749 abuse of the writ).
A constant re-litigation of issues, in addition to squandering precious judicial resources, undermines the entire criminal justice system. "A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the underlying substantive commands. . . . There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern, but merely anxiety and a desire for immobility." Bator, 76 Harv. L. Rev., at 452-453. "Without finality, the criminal law is deprived of much of its deterrent effect." Teague vs. Lane, 489 U.S. 288
at 309 (1989).
Given all of the foregoing, this Court could, in its exercise of discretion, find that the petitioner, by failing to raise the claim of ineffective assistance of appellate counsel, has abused the writ of habeas corpus through inexcusable neglect and should, therefore, be, denied access to the courts. Nevertheless, since the application of this draconic measure would deprive the petitioner of any opportunity by which he can challenge the effectiveness of his appellate counsel,[2] the motion to dismiss as to Count three is denied.
Accordingly, the Respondent's Motion to Dismiss is Granted as to CountsOne and Two of the Amended Petition for a Writ of Habeas Corpus andDenied as to Count Three of the Amended Petition for a Writ of HabeasCorpus
 ______________________________ S.T. Fuger, Jr., Judge